Clarence J. SANDERSON, Sr., and Katherine R. Sanderson, Appellants,

v.

Charles LESS and Annette Less, Respondents.

No. 45342.

Supreme Court of Missouri.

Division No. 2.

Dec. 10, 1956.

J. K. Owens, Kansas City, for appellants.

Bellemere & Bellemere, Kansas City, for respondents.

BARRETT, Commissioner.

Mr. and Mrs. Clarence J. Sanderson own the property known as 5131 Virginia Avenue, a fifty-foot lot, and Mr. and Mrs. Charles Less own the adjoining property on the north, a forty-foot lot, known as 5127 Virginia Avenue. The Lesses' garage is in the basement of their house and the Sandersons' three-car garage is to the rear of their house on the back of the lot. In this action Mr. and Mrs. Sanderson sought to have the court declare an easement for a driveway to the garages, 3.7 feet on their property and 3.8 feet on the property of the defendants. The trial court, however, found all the issues for the defendants and the plaintiffs have appealed and urge, upon this "review [of] the case upon both the law and the evidence as in suits of an equitable nature", V.A.M.S. § 510.310, that

this court is obliged to declare the easement, upon this record as a matter of law.

It was the plaintiffs' theory that Mr. George F. Berry, the common source of title, owned these and other lots and in 1924 built both houses and constructed a driveway on the common boundary line, 3.8 feet on the defendants' property and 3.7 feet on the plaintiffs' property, and that thereafter, until 1947, his successors in title used the common driveway and thereby established an easement by prescription. Annotation 27 A.L.R. (2) 332, 345; Di Pasco v. Prosser, 364 Mo. 1193, 274 S.W. 2d 279; Foxx v. Thompson, 358 Mo. 610, 216 S.W.2d 87. The defendants, on the other hand, denied the adverse or prescriptive use of the driveway and, in addition, claimed that the driveway and whatever prior use may have been made of it was abandoned in 1947 in such manner as to destroy any easement that may have previously existed.

■ There was evidence in support of the plaintiffs' initial claim and theory. It was stipulated that Mr. George F. Berry was the common source of title. In 1924 Mr. Berry built both houses, the Sandersons' house first, and rented them to several people. Neighbors and people who had formerly lived in the neighborhood testified that thenceforward the residents of both houses used the driveway. On September 18, 1933, Mr. Berry conveyed both properties to his son and daughter-in-law, Carroll and Mildred Berry, and they rented the houses to people who continued using the driveway. In July 1940 Mr. and Mrs. Carroll Berry sold the property at 5131 Virginia Avenue to Helen Mulcahey, the plaintiffs' adopted daughter, and in 1944 Helen conveyed the property to Mr. and Mrs. Sanderson. In February 1934 Mr. Carroll Berry and his wife conveyed the property at 5127 Virginia Avenue to Gertrude Westergard, and in May 1937 a trustee's deed conveyed the property to Russell Connor, who in August 1940 conveyed to W. D. Connor. Mr. and Mrs. W. D.

Connor lived in the property for two years and then rented it to Mr. and Mrs. Less, who after occupying the property as tenants purchased it from Mr. Connor on April 14, 1945. Even after purchase of the properties, by Miss Mulcahey and the Sandersons in 1940 and by Mr. and Mrs. Less in 1945, both owners continued, until 1947, using the driveway as a means of ingress and egress to their garages. It cannot be denied, if these circumstances stood alone, that there is some evidentiary basis for the plaintiffs' claim that an easement by prescription was established. Di Pasco v. Prosser, supra; Foxx v. Thompson, supra; Prudential Insurance Co. of America v. Kelley, 233 Mo.App. 362, 120 S.W.2d 65. But these are not the only circumstances, and the trial court has found for the respondents (Compare Di Pasco v. Prosser, supra), and, while the review here is anew, the trial court's finding may not be ignored if it too has evidentiary support and the declaration of the easement is not compelled by the force of the circumstances or as a matter of law. Szombathy v. City of Berkeley, Mo., 280 S.W.2d 834; Miller v. Berry, Mo.App., 270 S.W.2d 666; Jaeger v. Reynolds, Mo., 276 S.W.2d 182, 187.

In the several conveyances of the lots there were no express reservations of an easement, Compare: Judge v. Durham, Mo.App., 281 S.W.2d 16, and a "way of necessity" was neither claimed nor shown, Schnider v. M. E. H. Realty Inv. Co., 239 Mo.App. 546, 193 S.W.2d 69; the plaintiffs' claim and theory is an easement by prescription. In this connection it should be noted in passing that the respondents say that there is sufficient space on the plaintiffs' fifty-foot lot for the construction of a driveway. But there were no plats of the two properties with precise dimensions and locations of the houses or of the space between them,—it only appears that the driveway was 3.8 feet on the defendants' property and 3.7 feet on the plaintiffs' property and that the approximate center line of the driveway marked the boundary line of the lots. In the trial of the case

photographs of the two pieces of property were used but the parties have not caused them to be filed in this court. In fact, it does not plainly appear upon this record that Mr. Berry, the common source of title, constructed the driveway and neither does it plainly appear that adjoining lot owners constructed the driveway on a common boundary line for their common use. Annotation 27 A.L.R. (2), l. c. 342; Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894.

Mr. Carroll Berry, a lawyer, testified that his father built these houses and the house at 5133 Virginia Avenue as well and in 1934 conveyed these two houses to him and his wife. He said that he rented the houses to others until he conveyed one of them to the plaintiffs and the other to Mrs. Westergard. He said that he "claimed no easement one way or the other" in either lot. As for a driveway to the garages he said, "I didn't arrange for it." There was no other way to the garages and he "assumed" that the tenants in both houses used the driveway; "Whatever driveway was there, why, both parties had a right to use it at that time, yes, sir. * * * Well, we simply rented the premises that were there, *and the driveways were there,* and we assumed that they would use them for whatever —."

Miss Mulcahey and the Sandersons said that before purchasing 5131 Virginia Avenue they inspected the property, the driveway was there, the residents of both houses were using it and "we assumed it was an easement driveway. That is what we understood." They denied that anyone had informed them to the contrary. But Mr. Troupe, a real estate agent who represented Mr. Berry in the sale of the property to the plaintiffs, said, "I told him it was not an easement driveway." He may have meant that none was reserved in the conveyances or shown by the abstract of title. While the Lesses concede that they and the Sandersons used the driveway, until 1947, they insist that the Sandersons' use was by "permission" from a prior owner, Mr. Connor. And, the real estate agent who sold to Mr.

Connor said that he tried to get "an easement, driveway easement from him" but he refused to give it. Mr. Connor, who owned 5127 Virginia Avenue from 1937 to 1945 and who lived there for two years, said that the Berrys' tenants at 5131 Virginia did not use the driveway when he lived there and that Mr. Berry had asked him for an easement but "I would not sign any easement on it whatsoever." He claimed no easement in the defendants' lot and says that he told Mr. Berry's tenants and Mr. and Mrs. Less, when he sold the property to them, that the occupants of 5131 Virginia were "only using it with my permission." Mrs. Less says that when they first purchased the property Mrs. Sanderson came over and said, " 'While you are having the attorney draw up the papers, just have him draw up for the easement' " but, she said, "I didn't answer her."

■ Of course, the plaintiffs' request for an express easement, or a request by others for permission to use the driveway, would not destroy an easement previously acquired or established by prescription, but, if the court believed that such requests were in fact made, they are of some significance and probative force in support of the inference that the prior use was not in point of fact adverse but "in subordination" to those against whom it was claimed. Bridle Trail Ass'n v. O'Shanick, Mo.App., 290 S.W.2d 401, 407; Sanderson v. McManus, Mo., 252 S.W.2d 351, 357; 5 Restatement, Property, Sec. 458; Jacobs v. Brewster, supra. The views expressed by some of the defendants' witnesses as to "permissible" use may have been mere conclusions on their part and it may be, in view of the prior unequivocal acts and conduct of the parties, that their evidence in these respects is too tenuous to repel or destroy the inference of adverse use and consequent easement. But again, the determination of this appeal is not dependent on these facts and circumstances alone, neither is it necessary to say whether the "verbal acts of protest" by some of the Lesses' predecessors in title disproved previous acquiescence in

the joint and adverse use of the driveway. Annotation 5 A.L.R. 1325.

The immediate controversy originated in these circumstances which bring to light certain other relevant factors: As has been said, after the Lesses purchased 5127 Virginia Avenue they and the Sandersons continued using the driveway. In order for Mr. Less to conveniently drive into his basement garage it was necessary to "get on some of Mr. Sanderson's property in order to turn around, otherwise I had to back up because you couldn't get in that lawn. There is a terrace." On one occasion when Mr. Less came home Mr. Sanderson had so parked a truck in front of his garage that Mr. Less could not drive into his garage as he was accustomed to do. On another occasion Mr. Sanderson so stood in front of his garage that Mr. Less could not drive into his garage as he customarily did without hitting Mr. Sanderson who, upon request, refused to move. Within two or three weeks of these episodes Mr. Less had three iron posts, connected with chains, installed on the property line so that neither of them could use the driveway. In June 1947 the Sandersons instituted a suit against the Lesses in which they claimed an easement by prescription in the driveway and sought to enjoin any interference with their use of it. But, in October 1947, the Sandersons dismissed their action against the Lesses and constructed a driveway on the south side of their house, supposedly all on their own lot. Upon the Sandersons' dismissal of the suit and the construction of the new driveway Mr. Less employed a contractor to take up that part of the concrete driveway, 3.8 feet, on his side of the property line. He then constructed a driveway and entrance to his basement garage, all on his own lot. The Sandersons finally broke and took up that part of the driveway, 3.7 feet, on their property and stretched a wire or two along the property line. The Lesses have planted shrubbery on their side of the fence and the space that was once occupied by the driveway is now covered with grass. Obviously, since October 1947, the original driveway has not been used by anyone.

When the Sandersons built the driveway on the other side of their house, adjacent to 5133 Virginia Avenue, they became involved in a dispute with those neighbors, Mr. and Mrs. McManus. The Sandersons instituted an action against the McManuses and surveys developed an error of five feet in a prior survey and the fact that the McManus residence, particularly a window and eaves, encroached on the Sanderson lot. The conclusion of that litigation was that the Sandersons lost the suit and it was decreed that the McManuses had acquired an easement by prescription in the Sandersons' property. Sanderson v. McManus, Mo., 252 S.W.2d 351. The facts concerning that action and some circumstances relating to this one—including the Sandersons' testimony in that case that they did not have and claimed no easement in the driveway adjacent to the Lesses—are fully set forth in the opinion in that case. In any event, upon the termination of that litigation the Sandersons instituted this action against Mr. and Mrs. Less and again claimed an easement by prescription in the driveway.

Once an easement is established or acquired, it is not abandoned or destroyed by mere nonuser or by the use of another means of ingress and egress. 17 Am.Jur., Sec. 144, p. 1029; annotation 25 A.L.R. (2) 1265, 1299. It may, however, be extinguished by abandonment: "An easement may be extinguished by an intentional relinquishment thereof indicated by conduct respecting the use authorized thereby." 5 Restatement, Property, Sec. 504. But we need not say whether, in these circumstances, the Sandersons' nonuser of the driveway since 1947 and their participation in the obstruction and, finally, complete destruction of the driveway constituted an abandonment and extinguishment of any easement previously established by prescription. Annotation 25 A.L.R. (2), l. c. 1294. Compare: Arena v. Prisco,

Sup., 81 N.Y.S.2d 627. It is sufficient to say that their conduct since 1947, together with the facts and circumstances previously noted, so supports the trial court's finding that the prior use of the driveway was permissive or subordinate and not adverse that this court may not confidently decree otherwise upon this record. Jaeger v. Reynolds, supra; annotation 27 A.L.R. (2), l. c. 354. Accordingly, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.